JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Probate Judge John E. Corrigan that overruled objections to the decision of Magistrate John A. Polito and dismissed exceptions to the final accounts of the estates of Joseph P. Herrick and Florence E. Herrick, both deceased. Appellant William J. Tetlow, trustee for the Herricks' inter vivos trusts, asserts it was error to find that he lacked standing to object to the final accounts because he is required to maximize the trusts' assets. We reverse and remand.
 {¶ 2} Joseph P. Herrick and his wife, Florence E., had executed wills that devised the bulk of their estates to trusts created for the benefit of their children and grandchildren. The wills and trusts were executed on May 11, 1981, with the Herricks' son, Richard, ("Herrick") designated executor of both wills and Tetlow as trustee. Both trust agreements were identically amended on August 16, 1988, to provide:
 "The Trustee shall pay the income from this trust at least as often as semi-annually to those of:
1. My daughter, Bonnie B. Herrick,
2. My son, Richard J. Herrick,
3. My son's wife, Alys S. Herrick,
4. My grandson, Richard N. Herrick,
5. My grandson, Andrew J. Herrick and
6. My grandson, Timothy Alan Herrick
 who shall then be living. In the event I shall have another grandchild, who is the natural born child of my said son or daughter, such grandchild shall have an interest in this trust equal to the above named beneficiaries.
 The Trustee shall have the power and sole discretion to advance principal to any beneficiary. I remind my Trustee that the education of my grandchildren is of major interest to me and I therefore charge him to exercise his discretion accordingly.
 When the survivor of my said son, my said daughter, and my said son's wife shall have died, and when I have no living grandchildren under the age of 25 years, this Trust shall terminate and the Trustee shall distribute the Trust assets equally to the then income beneficiaries of this Trust."
 {¶ 1} The record reflects that sometime before November of 1996, Joseph and Florence Herrick were declared incompetent and Herrick was appointed as their guardian. On November 18, 1996, he requested authority to expend $120,000 from each of his parent's estates. In the applications he asserted that each of his parent's wills named the same six beneficiaries: Herrick, his wife, his sister and his three sons. This was not true, however, because under those wills, Herrick and his sister were identified only as the successor beneficiaries of each parent's tangible chattel, if the surviving spouse of testator had predeceased. All other property was to pour over into the trusts. He contended that to save approximately $40,000 in federal estate taxes when his wards died, a gift of $10,000 from the assets of each guardianship should be given to each of the purported beneficiaries in 1996 and 1997. Each would then receive a total of $40,000 and each guardianship estate reduced by $120,000. Attached to the application was a letter from a CPA that, based upon the purported six beneficiaries, recommended such strategy. Also attached was a letter from Herrick's sister supporting the recommendation. The application was approved and distribution was made.
 {¶ 2} Joseph Herrick died in June of 1998 and Florence in November, 1998. In November of 2001, Tetlow filed exceptions to the executor's final accounts of the estates' assets. He claimed that Herrick, as executor, had failed to redress wrongful distributions he had made to himself and his family while guardian of the estates.[1] On July 31, 2002, the magistrate's decision recommended dismissal of the exceptions because none of the trusts' named beneficiaries had objected to the final accounts and Tetlow had no other interest to assert. The decision stated that "the Trustee is merely a stakeholder and has no standing to continually raise collateral issues."
 {¶ 3} Tetlow objected to the decision and argued that his discretionary power over distribution of the principal under the trusts gave him an interest that could not be eliminated by consent of the beneficiaries. The judge adopted the magistrate's findings, overruled the objections, and dismissed the exceptions to the final accounts.
 {¶ 4} Tetlow's single assignment of error challenges the finding that he lacked standing to file exceptions under R.C. 2109.33.
 {¶ 5} Although Herrick claims that a number of Tetlow's factual assertions must be stricken because he failed to file a hearing transcript with the judge,[2] this contention is moot because the record presented to the judge includes the trust agreements, which were submitted with the exceptions to the final accounts. Regardless of the standard used to review factual findings, we review issues of law de novo,[3] and the question of standing presents an issue of law that we can determine based upon the unambiguous language of the trust agreements.
 {¶ 6} The judge found that the trustee had no standing to object to the executor's final accounts because he was "merely a stakeholder" and none of the trust beneficiaries had objected. A trustee is considered a "mere stakeholder" if he has "no duty to perform other than to pay out funds to various claimants as ordered by a proper court * * *."[4] The trustee is a proper party, however, "[w]here a judgment affects or threatens the existence, validity or continuance of the trust or prevents the trustee from discharging his duties thereunder, or where such judgment threatens to defeat the purpose of the trust * * *."[5]
 {¶ 7} The executor's final accounts do not threaten the existence, validity, or continuance of the trusts, but Tetlow claims a duty to maximize the trusts' assets in order to carry out their purposes. We agree. The trusts give Tetlow discretionary authority to advance principal to any income beneficiary, and precatory language encourages him to make advances to pay the grandchildren's educational expenses. Therefore, part of Tetlow's responsibility was to maximize the trusts' assets so that he would have more liberty to exercise his discretion in carrying out the trusts' purposes. The trusts were to terminate and the corpus distributed to the then living grandchildren only when Herrick, his wife and sister died, and if all the grandchildren were over twenty-five years of age. Until them, Tetlow was required to pay only income from the trusts to the living beneficiaries on a semi-annual basis. In 1996, Herrick effectively provided trust corpus to himself, his wife, and his sister, as well as grandchildren who may not have been twenty-five years old.
 {¶ 8} The fact that none of the named beneficiaries objected to the final accounts does not eliminate the trustee's interest in carrying out the settlors' intent. This issue can be compared to cases determining whether to terminate a trust at the request of the beneficiaries. In such cases the trust can be terminated if all beneficiaries consent, the trust does not expressly or impliedly prohibit termination, and there remains no material purpose to be carried out under the trust.[6] Although the trusts are not being terminated, the judge's ruling essentially relies on the named beneficiaries' consent to foreclose the possibility of adding further assets to the trusts. As already noted, the refusal to allow Tetlow to maximize trust assets impairs his discretion in advancing principal and, therefore, impairs his ability to carry out the settlors' wishes. Beneficiaries do not have authority, even by unanimous consent, to defeat a trust's purposes.[7]
 {¶ 9} Furthermore, even though Tetlow has not raised the argument, all beneficiaries have yet to be ascertained because the trusts state that grandchildren born after the date of execution are entitled to share in the assets and to benefit from the trusts. Although R.C.2131.08(C) allows reformation of grants that violate the rule against perpetuities, the legislature has not expressly abrogated certain concepts associated with the rule and applicable in other contexts, among them the "fertile octogenarian."[8] Therefore, even if Herrick and his wife and sister established that they were beyond normal child-bearing age, the law would not regard the class of beneficiaries as closed until their deaths.[9] Because all beneficiaries have not been ascertained, there is no unanimous consent to the executor's final accounts and Tetlow also has standing to assert the interests of the contingent beneficiaries. The assignment of error is sustained.
Judgment reversed and remanded.
 DIANE KARPINSKI, J., CONCURS ANN DYKE, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION
[1] See In re First Natl. Bank of Mansfield (1974), 37 Ohio St.2d 60, 66 O.O.2d 162, 307 N.E.2d 23.
[2] Civ.R. 53(E)(3)(b).
[3] Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107,108, 1995-Ohio-214, 652 N.E.2d 684.
[4] Toledo Trust Co. v. Farmer (1956), 165 Ohio St. 378, 60 O.O. 8,135 N.E.2d 356, paragraph one of the syllabus.
[5] Id. at paragraph two of the syllabus.
[6] Carnahan v. Johnson (1998), 127 Ohio App.3d 195, 200-201,711 N.E.2d 1093.
[7] Id.; Brown v. Moss (Nov. 10, 1999), Summit App. No. 19422.
[8] Tachet v. Ameritrust Co. Natl. Assn. (Apr. 11, 1991), Cuyahoga App. Nos. 57781, 57782.
[9] Id.; but, see, In re Will of Spindler (Feb. 26, 1987), Ross App. No. 1327.